IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA BROOKS-NEWHOUSE,<br><br>    Plaintiff,<br>  v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>    Defendant. | No. C 04-03745 SI<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REMANDING ACTION** |

## BACKGROUND

Plaintiff Tina Brooks-Newhouse is a 34 year old woman with a 12th grade education and six years of intermittent college without a degree. Administrative Transcript ("A.T.") at 68-81, 259. As of the date of the written decision by the Administrative Law Judge ("ALJ"), plaintiff was homeless, sleeping in her car and occasionally staying with friends. Id. at 24. Plaintiff has four children, three of whom are being cared for by her mother. Id. at 170-88.

Various medical reports document plaintiff's psychiatric and social history. Briefly, plaintiff was cared for primarily by her single mother. Id. At age five, plaintiff was raped by her 15-year-old brother. Id. Plaintiff's mother, who walked into the room while the assault was in progress, beat and verbally reprimanded plaintiff over the incident. Id. At age seven, plaintiff was again raped by her babysitter's sons. Id.

Plaintiff was first married at age 21 and divorced a few years later. Id. at 57-63. Plaintiff later remarried and separated in 2001. Id. at 170-88, 269-70. Her second husband was recently incarcerated for sexually abusing plaintiff's daughter. Id. at 170-88. Plaintiff claims it is now difficult for her to be around men and has since started dating women exclusively. A.T. 170-88, 272.

Plaintiff claims that, in January of 2001, she became so depressed she could no longer function

adequately to maintain regular employment. Id. at 170-88. That same year, plaintiff lost her full-time job and began working through a temporary agency. Id. Plaintiff's earnings for 2001 were $5,528, less than the previous two years, which were just above $26,000 per year. Id. at 64-67. With the exception of 1992 and 1997, in which she had no reported earnings, plaintiff's yearly earnings from 1994 to 1998 ranged from $4,045 to $9,998. Id.

In February 2002, plaintiff began visiting the Pacific Center for Human Growth, where she was treated by Traci Williams, Marriage Family Therapist Intern ("MFTI"). Ms. Williams' diagnostic impression of plaintiff was major depressive episode, (moderate), rule-out post traumatic stress disorder ("PTSD") and anxiety-induced arrhythmia. Id. at 27, 170-88. Ms. Williams completed an updated report on August 28, 2002, and again on April 25, 2003. Id. at 27, 202-03, 227-31. The last report from April 2003 diagnosed plaintiff with major depressive disorder (recurrent with melancholic features) and PTSD (chronic). Id. at 227-31.

In March 2002, at the request of the Commissioner, a consultative psychologist, Sokley Khoi, Ph.D., conducted an examination of the plaintiff, which yielded a diagnosis of depressive disorder, NOS, with mild to moderate impairment in the ability to withstand the stress of a routine work day. Id. at 189-92.

On February 13, 2002, plaintiff applied for Disability Insurance Benefits and Supplemental Security Income payments. Id. at 57-63, 234-41. The applications were denied initially and on reconsideration. Id. at 41-45, 48-52, 95-100. On December 3, 2002, plaintiff filed a request for a hearing in front of an ALJ, which took place on September 16, 2003. Id. at 53-54, 256-77. On October 24, 2003, the ALJ issued his decision denying benefits based on a determination that, despite "severe" impairments restricting her capacity to perform some work activities, plaintiff was not disabled within the meaning of 20 C.F.R. § 404. Id. at 19-31.

Plaintiff appealed that decision to this Court. Plaintiff now brings a motion seeking summary judgment for the award of benefits, or, in the alternative, remand for further administrative proceedings; defendant seeks summary judgment of affirmance. The cross-motions for summary judgment are now before the Court.

**LEGAL STANDARD**

2

The Social Security Administration ("SSA") must follow a five step analysis to determine if a claimant is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520.

> First, the claimant must not currently be performing "substantial gainful activity." Second, the claimant, based on medical evidence, must have a "severe" impairment or combination of impairments. A severe impairment is one "which significantly limits the claimant's physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, a "severe" impairment must be equivalent in nature to an impairment listed in the regulations as one which the Commissioner acknowledges is so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1529(d). Fourth, if the claimant does not have a listed impairment, the impairment must in combination with other factors prevent the claimant from doing past work. Fifth and finally, if the claimant has established that the impairment prevents performance of past work, the burden shifts to the Commissioner to demonstrate that the claimant can perform other types of work that exist in the national economy, given the claimant's residual functional capacity, age, education, and work experience.

Distasio v. Shalala, 47 F.3d 348, (9th Cir. 1995).

A district court may disturb the final decision of the SSA "only if it is based on legal error or if the fact findings are not supported by substantial evidence." Sprague v. Bowen, 812 F.2d 1226, 1229 (9th Cir. 1987). A court may not order a remand if the error committed is harmless. See Booz v. Secretary of Health and Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993). Substantial evidence means "more than a mere scintilla, but less than a preponderance." Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990) (citations omitted). The court's review "must consider the record as a whole," both that which supports, as well as that which detracts from, the Secretary's decision. Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). "If the evidence admits of more than one rational interpretation, [the court] must uphold the decision of the ALJ." Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) (citing Allen v. Secretary of Health & Human Servs., 726 F.2d 1470, 1473 (9th Cir. 1984)).

**DISCUSSION**

The ALJ who evaluated plaintiff's claims followed the five step analysis and found that she was "not disabled" within the meaning of 20 C.F.R. § 404. Plaintiff challenges the ALJ's determination on six grounds, discussed below.

**A.   Medical expert testimony**

3

Plaintiff argues that the ALJ committed legal error by failing to obtain expert psychiatric testimony on the issue of whether plaintiff's impairment is equivalent in severity to any of the impairments listed in 20 C.F.R. § 404 subpart P, App. 1. "[A]n [ALJ] and the Appeals Council must obtain an updated medical opinion from a medical expert . . . [w]hen additional medical evidence is received that in the opinion of the [ALJ] or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any [listed] impairment." Social Security Rule ("SSR") 96-6p. Plaintiff claims that the April 25, 2003 "Evaluation Form" and "Community Outreach Questionnaire," completed by her MFTI, Ms. Williams, should have triggered the above provision. See A.T. at 227-31. However, nothing in the record suggests that these documents would have changed the ALJ's finding that plaintiff's impairment is not equivalent in severity to any of the listed impairments. If anything, the ALJ's decision suggests that the referenced documents reflect some mitigation in the degree of plaintiff's impairment. The ALJ noted that the April 25, 2003 documents state that plaintiff had no difficulties communicating and interacting appropriately and was able to understand and perform simple verbal and written instructions. See A.T. 27, 227-31. Therefore, the Court finds that the ALJ did not commit legal error by failing to seek expert psychiatric testimony.

## B.    Development of the record

Plaintiff argues that the ALJ committed legal error by requesting a consultative examination without first asking the treating source, Ms. Williams, for an updated medical report. The ALJ has a duty to fully and fairly develop a claimant's medical record to assure that the claimant's interests are considered. 20 C.F.R. § 416.912(d); see also DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The ALJ's duty to conduct an appropriate inquiry is triggered when there is ambiguous evidence in the record or upon the ALJ's own finding that the record is inadequate to allow for proper evaluation. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotations omitted). However, plaintiff's allegation of failure to fully develop the record does not, in and of itself, warrant relief in this instance. See Abrego v. Commissioner of the SSA, 2000 U.S. Dist. LEXIS 8900 at 14 (D. Or. 2000). The court must consider whether the ALJ's decision is supported by substantial evidence in the record. See Sprague, 812 F.2d at 1229 (9th Cir. 1987).

4

Here, although the record does not reflect whether the ALJ took it upon himself to request any evidence from the treating source, Ms. Williams, such evidence was submitted to and considered by the ALJ. A.T. 26-28. Plaintiff's position seems to be that the ALJ erred by failing to request an updated report from Ms. Williams. The most recent evaluation report from Ms. Williams is dated April 25, 2003. See id. at 227-31. The hearing was held on September 16, 2003, approximately five months from the date of the report. The Court cannot find the ALJ's failure to request an updated report for the five-month period unreasonable. Moreover, the record upon which the ALJ based his decision consisted of objective medical findings, three opinion reports from the treating source, and one report from the consultative examiner. See id. at 117-231. The Court is satisfied that the medical record was adequately developed and that the ALJ based his decision on the entirety of the record. Therefore, the ALJ committed no legal error in failing to further develop the record.

## C. Inconsistencies between plaintiff's residual functional capacity and non-exertional limitations

Plaintiff claims that the ALJ made inconsistent findings about plaintiff's non-exertional limitations and her residual functional capacity. The ALJ found plaintiff limited to "unskilled" work due to psychologically-based symptoms and moderate limitations in her ability to follow detailed instructions. Id. at 30. The ALJ also found plaintiff's capacity for heavy work, as defined by 20 C.F.R. § 404.1567 and § 416.967,[1] to be substantially intact and not compromised by her non-exertional limitations. Id. at 31. Plaintiff apparently contends that it is inconsistent to find plaintiff's capacity for heavy work substantially intact despite "moderate" non-exertional limitations. The Court disagrees. It is not logically inconsistent to say that a person may satisfy the physical exertion requirements of heavy work yet be limited by psychologically-based symptoms in the ability to follow detailed instructions. Therefore, the Court finds no legal error in the ALJ's findings here.

## D. The ALJ's reliance on the Medical-Vocational Guidelines

---

[1] These provisions define physical exertion requirements and state that "[h]eavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567, 416.967.

5

Plaintiff argues that the ALJ committed legal error by relying on 20 C.F.R. § 404, subpart P, App. 2, the Medical-Vocational Guidelines ("the Grids") in determining that plaintiff is "not disabled" within the meaning of 20 C.F.R. § 404 and, instead, should have called upon a vocational expert to identify specific jobs within plaintiff's abilities. Defendant argues that this is an unusual instance in which reliance on the Grids without vocational expert testimony is permissible despite the presence of non-exertional limitations.

Once a claimant demonstrates that he or she is not capable of returning to his or her former employment, the burden shifts to the Commissioner to show that the claimant can perform other types of work in the national economy. Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988). This burden can be satisfied by either (1) applying the Grids in appropriate circumstances or (2) taking the testimony of a vocational expert. Id. "[T]he grids will be inappropriate where the predicate for using the grids – the ability to perform a full range of either medium, light or sedentary activities – is not present." Id.; see also 20 C.F.R. § 404 subpart P, App. 2(e). Where "a claimant's nonexertional limitations are in themselves enough to limit his range of work, the grids do not apply and the testimony of a vocational expert is required to identify specific jobs within the claimant's abilities." Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

The ALJ found that plaintiff has the maximum residual functional capacity to perform at all exertional levels. A.T. 30. In other words, the ALJ found no significant limitations on plaintiff's ability to perform the physical aspects of a given job. The ALJ also found "moderate limitations" in plaintiff's ability to function based on psychological symptoms. Id. Limitations based on psychological symptoms are non-exertional limitations. See 20 C.F.R. § 404.1569a(c). Though plaintiff's non-exertional limitations were deemed "moderate," the ALJ expressly found that these limitations restricted plaintiff's range of work to "unskilled" work. A.T. 30. Because the ALJ found that plaintiff's non-exertional limitations limited her range of work, he should not have relied on the Grids in making his determination of "not disabled" and was instead required to take the testimony of a vocational expert "to identify specific jobs within the claimant's abilities." See Polny, 864 F.2d at 663-64.

Accordingly, the Court finds that the ALJ committed legal error by failing to seek the testimony of a vocational expert.

6

### E. Plaintiff's subjective testimony

Plaintiff argues that the ALJ improperly dismissed plaintiff's subjective testimony regarding her functional limitations as not "fully credible or reliable." A.T. 28. Defendant contends that substantial evidence supports the ALJ's finding that plaintiff's subjective complaints are not fully credible. Though "[a]n ALJ [is not] required to believe every allegation of disabling pain," Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989), an "ALJ may not reject [a] claimant's testimony about her limitations only because they are not supported by objective evidence." Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001). The ALJ must give specific and convincing reasons for rejecting a claimant's subjective statements. Id. at 1148.

Here, the ALJ discredited plaintiff's subjective testimony, in part, because of the lack of objective evidence regarding the degree of her alleged limitations. "Once a claimant submits objective medical evidence establishing an impairment that could reasonably be expected to cause some pain, it is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings." Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989) (internal quotations omitted). As the ALJ noted, "[plaintiff's] subjective complaints and alleged functional limitations are consistent with medical signs and findings in the record." A.T. 25. Therefore, the ALJ in this case could not discredit plaintiff's subjective testimony on this basis alone. However, this lack of objective medical evidence was not the only reason given. The ALJ also noted that, despite plaintiff's alleged inability to function due to depression and anxiety, she was still able to work through a temporary agency and to perform daily activities such as self-care and caring for her children who are in the physical custody of her mother. In addition, the ALJ suggests that plaintiff's work record with the temporary agency in 2001 is evidence of her ability to function despite her alleged limitations. While such evidence potentially supports a contrary view – especially given that plaintiff's earnings for 2001 were $5,528.00, significantly lower than that for the previous two years – the ALJ's finding here is rational and not baseless. Therefore, the Court must give deference to the ALJ's finding on this point. See Heckler, 749 F.2d at 579 (the court must uphold the ALJ's decision where the evidence admits more than one rational interpretation).

Accordingly, the Court finds that the ALJ did not commit legal error by rejecting plaintiff's subjective testimony.

7

### F.     Plaintiff's treating source opinion

Plaintiff argues that the ALJ's decision is based on legal error because the ALJ failed to give proper weight to the opinions of plaintiff's treating therapist and because the ALJ failed to give specific and legitimate reasons for this failure. Defendant argues that a therapist is not an "acceptable medical source," so no special deference was owed to the opinions of Ms. Williams.

20 C.F.R. § 404.1513(a), which is captioned "Medical and other evidence of your impairments," defines what constitutes an "acceptable medical source" in establishing whether a claimant has a medically determinable impairment. Once an impairment is medically determinable, 20 C.F.R. § 404.1527 ("Evaluating opinion evidence") states that evidence about the nature and severity of a claimant's impairment may be drawn from medical opinions of physicians, psychologists, and other "acceptable medical sources." A MFTI such as Ms. Williams is not an "acceptable medical source" to establish a medically determinable impairment under § 404.1513(a). Therefore, defendant is correct that Ms. Williams' opinion may not be used in determining whether plaintiff has a medical impairment. However, as noted by the ALJ, "[plaintiff's] medical record contains a longitudinal record of treatment with objective medical findings showing that the claimant has multiple medically determinable mental impairments," including major depression secondary to dysfunctional family situations and loss of job. A.T. 25. Thus other acceptable medical sources already establish that plaintiff has a medically determinable impairment, so that it is of no consequence that Ms. Williams' opinion is not an acceptable medical source under § 404.1513(a).

Having established that plaintiff has medically determinable impairments, the question then becomes whether Ms. Williams' opinions are an "acceptable medical source" in evaluating the "nature and severity" of plaintiff's impairments. See § 404.1527. In addition to statements from physicians and psychologists, "other acceptable medical sources" can include other health professionals who do not have M.D.'s. See Lester v. Chater, 81 F.3d 821, 830 n.7 (9th Cir. 1995). "[M]ore weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Id. If the treating source's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, then controlling weight is given to the treating source's opinion. 20 C.F.R. § 404.1527(d)(2).

8

Here, though the ALJ did not reject Ms. Williams' opinion outright, he gave it minor weight. A.T. 28. The ALJ appears to have given more weight to the opinion of the examining psychologist, Dr. Khoi. See id. Since the treating source opinion is well-supported by the objective medical evidence and is not inconsistent with other substantial evidence in the record, the ALJ should have given Ms. Williams' opinion controlling or at least more than minor weight.[2]

Dr. Khoi stated that plaintiff's ability to withstand the stress of a routine workday was mild to moderate, and that her ability to interact with others on a regular basis was mildly impaired. Id. This statement does not necessarily conflict with Ms. Williams' most recent observations[3] that plaintiff has no difficulties communicating and interacting appropriately, is able to understand and perform simple instructions, and has the ability to manage business affairs without impediment, but Ms. Williams also stated that various psychological factors may exacerbate plaintiff's symptomatology and cause her some significant difficulty in being able to return to work. A.T. 27-28. The Court cannot determine whether the ALJ's determination of "not disabled" would have resulted differently had Ms. Williams' opinion been given either controlling or greater than minor weight.

Defendant argues that the ALJ legitimately rejected Ms. Williams' opinion in any event because his decision was based on specific and legitimate reasons supported by substantial evidence in the record. See Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) (ALJ legitimately accorded less weight to examining psychologist's opinion because his diagnoses were based on the self reporting of an unreliable person); Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989) (ALJ legitimately rejected treating physicians' opinions because of specifically-noted conflicts with substantial objective medical evidence in the record). Here, the ALJ noted that despite plaintiff's mental impairment, she was able to maintain very responsible positions in 1999 and 2000, and continued to work in responsible positions on a part-time basis after the alleged onset date of January 2001. A.T. 28. Defendant seems to rely on this evidence as a sufficiently specific

---

[2] Even if Ms. Williams' opinion did not deserve controlling weight under 20 C.F.R. § 404.1527(d)(2), the ALJ should have given it more weight than Dr. Khoi's opinion based on the factors listed under § 404.1527(d)(2)(i), (ii), and §404.1527(d)(3)-(6). Such factors include the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship.

[3] From the April 25, 2003 "Evaluation Form For Mental Disorders." See A.T. 227-31.

9

and legitimate reason to justify rejection of Ms. Williams' opinions. However, while such evidence might justify the ALJ's rejection of plaintiff's subjective testimony, the Court does not see how this evidence justifies the ALJ's minimization of Ms. Williams' medical opinions. As the treating source, the opinions of Ms. Williams deserved more than minor weight. In addition, the ALJ failed to provide specific and legitimate reasons for according them less weight than required. Therefore, the Court finds that the ALJ committed legal error in giving Ms. Williams' opinions only minor weight.

Accordingly, the Court instructs the ALJ on remand to reevaluate plaintiff's disability claims with proper weight accorded to the treating source opinion.

## CONCLUSION

For the above reasons, the Court hereby GRANTS plaintiff's motion for summary judgment and REMANDS the case for further administrative proceedings. On remand, the ALJ must (1) obtain testimony from a vocational expert to identify specific jobs within the plaintiff's abilities; (2) accord proper weight to plaintiff's treating source opinion; and (3) reevaluate his final determination of "not disabled" in light of the above modifications. [Docket # 15]

**IT IS SO ORDERED.**

Dated: July 7, 2005

SUSAN ILLSTON
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA BROOKS-NEWHOUSE,<br><br>   Plaintiff,<br>   v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>   Defendant. | No. C 04-03745 SI<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REMANDING ACTION** |

## BACKGROUND

Plaintiff Tina Brooks-Newhouse is a 34 year old woman with a 12th grade education and six years of intermittent college without a degree. Administrative Transcript ("A.T.") at 68-81, 259. As of the date of the written decision by the Administrative Law Judge ("ALJ"), plaintiff was homeless, sleeping in her car and occasionally staying with friends. Id. at 24. Plaintiff has four children, three of whom are being cared for by her mother. Id. at 170-88.

Various medical reports document plaintiff's psychiatric and social history. Briefly, plaintiff was cared for primarily by her single mother. Id. At age five, plaintiff was raped by her 15-year-old brother. Id. Plaintiff's mother, who walked into the room while the assault was in progress, beat and verbally reprimanded plaintiff over the incident. Id. At age seven, plaintiff was again raped by her babysitter's sons. Id.

Plaintiff was first married at age 21 and divorced a few years later. Id. at 57-63. Plaintiff later remarried and separated in 2001. Id. at 170-88, 269-70. Her second husband was recently incarcerated for sexually abusing plaintiff's daughter. Id. at 170-88. Plaintiff claims it is now difficult for her to be around men and has since started dating women exclusively. A.T. 170-88, 272.

Plaintiff claims that, in January of 2001, she became so depressed she could no longer function

adequately to maintain regular employment. Id. at 170-88. That same year, plaintiff lost her full-time job and began working through a temporary agency. Id. Plaintiff's earnings for 2001 were $5,528, less than the previous two years, which were just above $26,000 per year. Id. at 64-67. With the exception of 1992 and 1997, in which she had no reported earnings, plaintiff's yearly earnings from 1994 to 1998 ranged from $4,045 to $9,998. Id.

In February 2002, plaintiff began visiting the Pacific Center for Human Growth, where she was treated by Traci Williams, Marriage Family Therapist Intern ("MFTI"). Ms. Williams' diagnostic impression of plaintiff was major depressive episode, (moderate), rule-out post traumatic stress disorder ("PTSD") and anxiety-induced arrhythmia. Id. at 27, 170-88. Ms. Williams completed an updated report on August 28, 2002, and again on April 25, 2003. Id. at 27, 202-03, 227-31. The last report from April 2003 diagnosed plaintiff with major depressive disorder (recurrent with melancholic features) and PTSD (chronic). Id. at 227-31.

In March 2002, at the request of the Commissioner, a consultative psychologist, Sokley Khoi, Ph.D., conducted an examination of the plaintiff, which yielded a diagnosis of depressive disorder, NOS, with mild to moderate impairment in the ability to withstand the stress of a routine work day. Id. at 189-92.

On February 13, 2002, plaintiff applied for Disability Insurance Benefits and Supplemental Security Income payments. Id. at 57-63, 234-41. The applications were denied initially and on reconsideration. Id. at 41-45, 48-52, 95-100. On December 3, 2002, plaintiff filed a request for a hearing in front of an ALJ, which took place on September 16, 2003. Id. at 53-54, 256-77. On October 24, 2003, the ALJ issued his decision denying benefits based on a determination that, despite "severe" impairments restricting her capacity to perform some work activities, plaintiff was not disabled within the meaning of 20 C.F.R. § 404. Id. at 19-31.

Plaintiff appealed that decision to this Court. Plaintiff now brings a motion seeking summary judgment for the award of benefits, or, in the alternative, remand for further administrative proceedings; defendant seeks summary judgment of affirmance. The cross-motions for summary judgment are now before the Court.

**LEGAL STANDARD**

The Social Security Administration ("SSA") must follow a five step analysis to determine if a claimant is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520.

> First, the claimant must not currently be performing "substantial gainful activity." Second, the claimant, based on medical evidence, must have a "severe" impairment or combination of impairments. A severe impairment is one "which significantly limits the claimant's physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, a "severe" impairment must be equivalent in nature to an impairment listed in the regulations as one which the Commissioner acknowledges is so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1529(d). Fourth, if the claimant does not have a listed impairment, the impairment must in combination with other factors prevent the claimant from doing past work. Fifth and finally, if the claimant has established that the impairment prevents performance of past work, the burden shifts to the Commissioner to demonstrate that the claimant can perform other types of work that exist in the national economy, given the claimant's residual functional capacity, age, education, and work experience.

Distasio v. Shalala, 47 F.3d 348, (9th Cir. 1995).

A district court may disturb the final decision of the SSA "only if it is based on legal error or if the fact findings are not supported by substantial evidence." Sprague v. Bowen, 812 F.2d 1226, 1229 (9th Cir. 1987). A court may not order a remand if the error committed is harmless. See Booz v. Secretary of Health and Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993). Substantial evidence means "more than a mere scintilla, but less than a preponderance." Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990) (citations omitted). The court's review "must consider the record as a whole," both that which supports, as well as that which detracts from, the Secretary's decision. Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). "If the evidence admits of more than one rational interpretation, [the court] must uphold the decision of the ALJ." Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) (citing Allen v. Secretary of Health & Human Servs., 726 F.2d 1470, 1473 (9th Cir. 1984)).

## DISCUSSION

The ALJ who evaluated plaintiff's claims followed the five step analysis and found that she was "not disabled" within the meaning of 20 C.F.R. § 404. Plaintiff challenges the ALJ's determination on six grounds, discussed below.

**A.   Medical expert testimony**

3

1   Plaintiff argues that the ALJ committed legal error by failing to obtain expert psychiatric testimony on
2   the issue of whether plaintiff's impairment is equivalent in severity to any of the impairments listed in 20 C.F.R.
3   § 404 subpart P, App. 1. "[A]n [ALJ] and the Appeals Council must obtain an updated medical opinion from
4   a medical expert . . . [w]hen additional medical evidence is received that in the opinion of the [ALJ] or the
5   Appeals Council may change the State agency medical or psychological consultant's finding that the
6   impairment(s) is not equivalent in severity to any [listed] impairment." Social Security Rule ("SSR") 96-6p.
7   Plaintiff claims that the April 25, 2003 "Evaluation Form" and "Community Outreach Questionnaire,"
8   completed by her MFTI, Ms. Williams, should have triggered the above provision. See A.T. at 227-31.
9   However, nothing in the record suggests that these documents would have changed the ALJ's finding that
10  plaintiff's impairment is not equivalent in severity to any of the listed impairments. If anything, the ALJ's
11  decision suggests that the referenced documents reflect some mitigation in the degree of plaintiff's impairment.
12  The ALJ noted that the April 25, 2003 documents state that plaintiff had no difficulties communicating and
13  interacting appropriately and was able to understand and perform simple verbal and written instructions. See
14  A.T. 27, 227-31. Therefore, the Court finds that the ALJ did not commit legal error by failing to seek expert
15  psychiatric testimony.

17  **B.    Development of the record**

18  Plaintiff argues that the ALJ committed legal error by requesting a consultative examination without first
19  asking the treating source, Ms. Williams, for an updated medical report. The ALJ has a duty to fully and fairly
20  develop a claimant's medical record to assure that the claimant's interests are considered. 20 C.F.R. §
21  416.912(d); see also DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The ALJ's duty to conduct
22  an appropriate inquiry is triggered when there is ambiguous evidence in the record or upon the ALJ's own
23  finding that the record is inadequate to allow for proper evaluation. Tonapetyan v. Halter, 242 F.3d 1144,
24  1150 (9th Cir. 2001) (internal quotations omitted). However, plaintiff's allegation of failure to fully develop
25  the record does not, in and of itself, warrant relief in this instance. See Abrego v. Commissioner of the SSA,
26  2000 U.S. Dist. LEXIS 8900 at 14 (D. Or. 2000). The court must consider whether the ALJ's decision is
27  supported by substantial evidence in the record. See Sprague, 812 F.2d at 1229 (9th Cir. 1987).

4

Here, although the record does not reflect whether the ALJ took it upon himself to request any evidence from the treating source, Ms. Williams, such evidence was submitted to and considered by the ALJ. A.T. 26-28. Plaintiff's position seems to be that the ALJ erred by failing to request an updated report from Ms. Williams. The most recent evaluation report from Ms. Williams is dated April 25, 2003. See id. at 227-31. The hearing was held on September 16, 2003, approximately five months from the date of the report. The Court cannot find the ALJ's failure to request an updated report for the five-month period unreasonable. Moreover, the record upon which the ALJ based his decision consisted of objective medical findings, three opinion reports from the treating source, and one report from the consultative examiner. See id. at 117-231. The Court is satisfied that the medical record was adequately developed and that the ALJ based his decision on the entirety of the record. Therefore, the ALJ committed no legal error in failing to further develop the record.

## C.   Inconsistencies between plaintiff's residual functional capacity and non-exertional limitations

Plaintiff claims that the ALJ made inconsistent findings about plaintiff's non-exertional limitations and her residual functional capacity. The ALJ found plaintiff limited to "unskilled" work due to psychologically-based symptoms and moderate limitations in her ability to follow detailed instructions. Id. at 30. The ALJ also found plaintiff's capacity for heavy work, as defined by 20 C.F.R. § 404.1567 and § 416.967,[1] to be substantially intact and not compromised by her non-exertional limitations. Id. at 31. Plaintiff apparently contends that it is inconsistent to find plaintiff's capacity for heavy work substantially intact despite "moderate" non-exertional limitations. The Court disagrees. It is not logically inconsistent to say that a person may satisfy the physical exertion requirements of heavy work yet be limited by psychologically-based symptoms in the ability to follow detailed instructions. Therefore, the Court finds no legal error in the ALJ's findings here.

## D.   The ALJ's reliance on the Medical-Vocational Guidelines

---

[1] These provisions define physical exertion requirements and state that "[h]eavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567, 416.967.

5

Plaintiff argues that the ALJ committed legal error by relying on 20 C.F.R. § 404, subpart P, App. 2, the Medical-Vocational Guidelines ("the Grids") in determining that plaintiff is "not disabled" within the meaning of 20 C.F.R. § 404 and, instead, should have called upon a vocational expert to identify specific jobs within plaintiff's abilities. Defendant argues that this is an unusual instance in which reliance on the Grids without vocational expert testimony is permissible despite the presence of non-exertional limitations.

Once a claimant demonstrates that he or she is not capable of returning to his or her former employment, the burden shifts to the Commissioner to show that the claimant can perform other types of work in the national economy. Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988). This burden can be satisfied by either (1) applying the Grids in appropriate circumstances or (2) taking the testimony of a vocational expert. Id. "[T]he grids will be inappropriate where the predicate for using the grids – the ability to perform a full range of either medium, light or sedentary activities – is not present." Id.; see also 20 C.F.R. § 404 subpart P, App. 2(e). Where "a claimant's nonexertional limitations are in themselves enough to limit his range of work, the grids do not apply and the testimony of a vocational expert is required to identify specific jobs within the claimant's abilities." Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

The ALJ found that plaintiff has the maximum residual functional capacity to perform at all exertional levels. A.T. 30. In other words, the ALJ found no significant limitations on plaintiff's ability to perform the physical aspects of a given job. The ALJ also found "moderate limitations" in plaintiff's ability to function based on psychological symptoms. Id. Limitations based on psychological symptoms are non-exertional limitations. See 20 C.F.R. § 404.1569a(c). Though plaintiff's non-exertional limitations were deemed "moderate," the ALJ expressly found that these limitations restricted plaintiff's range of work to "unskilled" work. A.T. 30. Because the ALJ found that plaintiff's non-exertional limitations limited her range of work, he should not have relied on the Grids in making his determination of "not disabled" and was instead required to take the testimony of a vocational expert "to identify specific jobs within the claimant's abilities." See Polny, 864 F.2d at 663-64.

Accordingly, the Court finds that the ALJ committed legal error by failing to seek the testimony of a vocational expert.

6

### E. Plaintiff's subjective testimony

Plaintiff argues that the ALJ improperly dismissed plaintiff's subjective testimony regarding her functional limitations as not "fully credible or reliable." A.T. 28. Defendant contends that substantial evidence supports the ALJ's finding that plaintiff's subjective complaints are not fully credible. Though "[a]n ALJ [is not] required to believe every allegation of disabling pain," Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989), an "ALJ may not reject [a] claimant's testimony about her limitations only because they are not supported by objective evidence." Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001). The ALJ must give specific and convincing reasons for rejecting a claimant's subjective statements. Id. at 1148.

Here, the ALJ discredited plaintiff's subjective testimony, in part, because of the lack of objective evidence regarding the degree of her alleged limitations. "Once a claimant submits objective medical evidence establishing an impairment that could reasonably be expected to cause some pain, it is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings." Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989) (internal quotations omitted). As the ALJ noted, "[plaintiff's] subjective complaints and alleged functional limitations are consistent with medical signs and findings in the record." A.T. 25. Therefore, the ALJ in this case could not discredit plaintiff's subjective testimony on this basis alone. However, this lack of objective medical evidence was not the only reason given. The ALJ also noted that, despite plaintiff's alleged inability to function due to depression and anxiety, she was still able to work through a temporary agency and to perform daily activities such as self-care and caring for her children who are in the physical custody of her mother. In addition, the ALJ suggests that plaintiff's work record with the temporary agency in 2001 is evidence of her ability to function despite her alleged limitations. While such evidence potentially supports a contrary view – especially given that plaintiff's earnings for 2001 were $5,528.00, significantly lower than that for the previous two years – the ALJ's finding here is rational and not baseless. Therefore, the Court must give deference to the ALJ's finding on this point. See Heckler, 749 F.2d at 579 (the court must uphold the ALJ's decision where the evidence admits more than one rational interpretation).

Accordingly, the Court finds that the ALJ did not commit legal error by rejecting plaintiff's subjective testimony.

7

### F. Plaintiff's treating source opinion

Plaintiff argues that the ALJ's decision is based on legal error because the ALJ failed to give proper weight to the opinions of plaintiff's treating therapist and because the ALJ failed to give specific and legitimate reasons for this failure. Defendant argues that a therapist is not an "acceptable medical source," so no special deference was owed to the opinions of Ms. Williams.

20 C.F.R. § 404.1513(a), which is captioned "Medical and other evidence of your impairments," defines what constitutes an "acceptable medical source" in establishing whether a claimant has a medically determinable impairment. Once an impairment is medically determinable, 20 C.F.R. § 404.1527 ("Evaluating opinion evidence") states that evidence about the nature and severity of a claimant's impairment may be drawn from medical opinions of physicians, psychologists, and other "acceptable medical sources." A MFTI such as Ms. Williams is not an "acceptable medical source" to establish a medically determinable impairment under § 404.1513(a). Therefore, defendant is correct that Ms. Williams' opinion may not be used in determining whether plaintiff has a medical impairment. However, as noted by the ALJ, "[plaintiff's] medical record contains a longitudinal record of treatment with objective medical findings showing that the claimant has multiple medically determinable mental impairments," including major depression secondary to dysfunctional family situations and loss of job. A.T. 25. Thus other acceptable medical sources already establish that plaintiff has a medically determinable impairment, so that it is of no consequence that Ms. Williams' opinion is not an acceptable medical source under § 404.1513(a).

Having established that plaintiff has medically determinable impairments, the question then becomes whether Ms. Williams' opinions are an "acceptable medical source" in evaluating the "nature and severity" of plaintiff's impairments. See § 404.1527. In addition to statements from physicians and psychologists, "other acceptable medical sources" can include other health professionals who do not have M.D.'s. See Lester v. Chater, 81 F.3d 821, 830 n.7 (9th Cir. 1995). "[M]ore weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Id. If the treating source's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, then controlling weight is given to the treating source's opinion. 20 C.F.R. § 404.1527(d)(2).

8

United States District Court
For the Northern District of California

Here, though the ALJ did not reject Ms. Williams' opinion outright, he gave it minor weight. A.T. 28. The ALJ appears to have given more weight to the opinion of the examining psychologist, Dr. Khoi. See id. Since the treating source opinion is well-supported by the objective medical evidence and is not inconsistent with other substantial evidence in the record, the ALJ should have given Ms. Williams' opinion controlling or at least more than minor weight.[2]

Dr. Khoi stated that plaintiff's ability to withstand the stress of a routine workday was mild to moderate, and that her ability to interact with others on a regular basis was mildly impaired. Id. This statement does not necessarily conflict with Ms. Williams' most recent observations[3] that plaintiff has no difficulties communicating and interacting appropriately, is able to understand and perform simple instructions, and has the ability to manage business affairs without impediment, but Ms. Williams also stated that various psychological factors may exacerbate plaintiff's symptomatology and cause her some significant difficulty in being able to return to work. A.T. 27-28. The Court cannot determine whether the ALJ's determination of "not disabled" would have resulted differently had Ms. Williams' opinion been given either controlling or greater than minor weight.

Defendant argues that the ALJ legitimately rejected Ms. Williams' opinion in any event because his decision was based on specific and legitimate reasons supported by substantial evidence in the record. See Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) (ALJ legitimately accorded less weight to examining psychologist's opinion because his diagnoses were based on the self reporting of an unreliable person); Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989) (ALJ legitimately rejected treating physicians' opinions because of specifically-noted conflicts with substantial objective medical evidence in the record). Here, the ALJ noted that despite plaintiff's mental impairment, she was able to maintain very responsible positions in 1999 and 2000, and continued to work in responsible positions on a part-time basis after the alleged onset date of January 2001. A.T. 28. Defendant seems to rely on this evidence as a sufficiently specific

---

[2] Even if Ms. Williams' opinion did not deserve controlling weight under 20 C.F.R. § 404.1527(d)(2), the ALJ should have given it more weight than Dr. Khoi's opinion based on the factors listed under § 404.1527(d)(2)(i), (ii), and §404.1527(d)(3)-(6). Such factors include the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship.

[3] From the April 25, 2003 "Evaluation Form For Mental Disorders." See A.T. 227-31.

9

1  and legitimate reason to justify rejection of Ms. Williams' opinions. However, while such evidence might justify
2  the ALJ's rejection of plaintiff's subjective testimony, the Court does not see how this evidence justifies the
3  ALJ's minimization of Ms. Williams' medical opinions. As the treating source, the opinions of Ms. Williams
4  deserved more than minor weight. In addition, the ALJ failed to provide specific and legitimate reasons for
5  according them less weight than required. Therefore, the Court finds that the ALJ committed legal error in
6  giving Ms. Williams' opinions only minor weight.

   Accordingly, the Court instructs the ALJ on remand to reevaluate plaintiff's disability claims with proper
   weight accorded to the treating source opinion.

## CONCLUSION

For the above reasons, the Court hereby GRANTS plaintiff's motion for summary judgment and REMANDS the case for further administrative proceedings. On remand, the ALJ must (1) obtain testimony from a vocational expert to identify specific jobs within the plaintiff's abilities; (2) accord proper weight to plaintiff's treating source opinion; and (3) reevaluate his final determination of "not disabled" in light of the above modifications. [Docket # 15]

**IT IS SO ORDERED.**

Dated: July 7, 2005

                                        SUSAN ILLSTON
                                        United States District Judge